

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner General Land Office
Austin, Texas

Dear Mr. Giles:

           Opinion No. 0-975
           Re: Authority of General Land
               Office under Relinquishment
               Act to receive and file oil
               and gas lease executed by
               owner of an undivided inter-
               est in school land sold with
               mineral reservation.

        This is in reply to your letter of June 12, 1939, wherein you request the opinion of this Department as to whether or not you are authorized to accept and file an oil and gas lease covering school land sold with mineral reservation when such lease is executed only by the owner of an undivided interest in the surface and soil of such land, the remaining owners of such undivided interest having failed to execute the lease.

        You refer in your letter to two situations. First, when the lease executed by the owner of an undivided interest purports to cover only such portion of the land in question as is owned by such owner; second, where a lease executed only by the owner of an undivided interest purports to cover a full interest in the entire tract.

        In your letter you submit a concrete case pending before you involving a lease dated May 11, 1937, executed by Saltmount Oil Company in favor of E. A. Shewers, W. A. Moncrief and C. E. Hyde, which lease on its face purports to cover the entire southwest quarter (S. W. 1/4)

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

of Sec. 2 of Block B-27, public school land in Crane County, Texas. You state that according to information furnished to you in certain letters, it has developed that Saltmount Oil Company has only a 1/16 undivided interest in the 160 acres described in the face of the lease. In your letter you enclosed a photostatic copy of such lease. Such lease recites a consideration of $4,000.00 cash in hand paid and further provides for an annual delay rental of $160.00. Such lease is executed by Saltmount Oil Company "acting for itself and as agent for the State of Texas."

Paragraph 9 of said lease reads as follows:

"If said lessor owns a less interest in the leased premises than the entire and undivided fee simple estate, or no interest therein, then the royalties, rentals and other moneys herein provided for shall be paid lessor only in the proportion which lessor's interest, if any, bears to the whole and undivided fee."

You state that one-half of the $4,000.00 bonus was paid into your office at the time this lease was signed, and that the lessees have paid to the State in 1958 and in 1959 only a $5.00 rental, which rental is at the rate of 50 cents per acre for 10 acres.

The first question presented by your letter is whether or not under the provisions of Articles 5367 and 5368, commonly known as the Relinquishment Act, an owner of an undivided interest in land included within said Act is authorized to execute an oil and gas lease, as agent for the State of Texas.

Article 5367 provides as follows:

"The State hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value

is hereby reserved for the use of and benefit
of the public school fund and the several asylum
funds."

Article 5368 provides as follows:

"The owner of said land is hereby authori-
zed to sell or lease to any person, firm or
corporation the oil and gas that may be thereon
or therein upon such terms and conditions as such
owner may deem best, subject only to the previ-
sions hereof, and he may have a second lien
thereon to secure the payment of any sum due him.
All leases and sales so made shall be assignable.
No oil or gas rights shall be sold or leased
hereunder for less than ten cents per acre per
year plus royalty, and the lessee or purchaser
shall in every case pay the State ten cents per
acre per year of sales and rentals; and in case
of production shall pay the State the undivided
one-sixteenth of the value of the oil and gas re-
served herein, and like amounts to the owner of
the soil."

These statutes were construed in Greene v. Robi-
son, 8 S. W. (2d) 655, as constituting the owner of the
surface and soil as the agent of the State for the purpose
of executing oil and gas lease upon such land, the agent's
compensation for his services and for use of the surface
being the right to receive from the lessee one-half of
the bonus, one-half of the rentals above 10 cents per
acre, and one-half of the royalty stipulated in the lease.
It was there further held that the owner of the soil did
not by the terms of the Relinquishment Act, become the
owner of any portion of the minerals in such land.

The Relinquishment Act makes no express pro-
vision for a situation such as the one presented in your
letter. The statute simply provides that "the owner of
the soil" is constituted the State's agent for the pur-
poses named. Although the intention of the Legislature
with respect to the situation in question is not clearly
expressed upon the face of the statute, that intention
can be ascertained, we believe, by a consideration of the
history preceding the legislation and the general purposes
and results which the legislation was intended to accomplish.

In Greene v. Robison, supra, the Supreme Court
summed up the facts which brought about the enactment of the

Relinquishment Act and the purposes which it was intended
to accomplish in the following words:

> "Therefore the very first words of this
> Mineral Act of 1919 disclosed that one of the
> purposes of the Act was 'to promote the active
> co-operation of the owner of the soil.' This
> calls attention to the conditions that made it
> desirable to secure the cooperation of the ow-
> ner of the soil. The State had sold the land,
> the soil with all that goes with it, to the pur-
> chaser thereof, and was under obligation to
> protect him in the use and enjoyment of what it
> had sold him; and this the state had failed to
> do.

> "There was a dual or double ownership
> of the land, the surface estate and the mineral
> estate, each antagonistic to and conflicting
> with the other. There was no provision of
> law for the protection of the owner of the
> soil in his peaceable enjoyment and possession
> of his property. The development of an oil field
> on it would be disastrous to him and utterly
> destructive of his property. Therefore the
> attitude of owners of the school and asylum
> lands throughout the state was practically one
> of armed resistance. The conditions were inim-
> ical to any effort at development, and the state
> was not realizing on its mineral estate in these
> lands. The purpose of the act was to meet this
> practical situation. Indeed, the rights of
> possession and user of the land as a whole by
> both the owner of the soil and the owner of the
> minerals, they being joint owners of the land, are
> mutual and blended. As in other joint ownerships,
> necessarily there must be cooperation. If the
> joint owners do not cooperate, confusion is bound
> to arise, the purposes and efforts of each are
> jeopardized and destroyed, and the state suffers
> loss, not only to its mineral estate, but like-
> wise as a sovereign in the administration of
> justice. The Legislature has brought about this
> desired result in a lawful manner by requiring



the purchaser of the oil and gas to compen-
sate the owner of the soil for the use he
makes of the surface, independent of the
price he prays for the minerals. He compen-
sates said owner for the inevitable damages
of oil exploration and operation. The land-
owner acquires no estate in the oil and gas.
He simply has a right to receive the com-
pensation from the lessee out of the lessee's
production as the state provides."

Keeping in mind the purpose of the Legislature
in enacting the Relinquishment Act as stated in Greens v.
Robison, supra, we feel no hesitation in construing such
Act as authorizing and empowering each owner of an un-
divided interest in the surface of the land included in
the Act to act as agent for the State in executing a
lease upon that proportion of the minerals that the undi-
vided owner's interest bears to the entire tract. To
hold otherwise would result in bringing about a situation
wherein the owner of a small fractional undivided interest
in a large tract of land could defeat the controlling pur-
pose and intention of the Relinquishment Act by failing
or refusing to join in an oil and gas lease covering the
entire tract. Such failure or refusal on the part of one
of the owners of an undivided interest might result from
a legal disability to act, or because of absence from the
state or country, or because of failure to agree with the
other owners of undivided interests or with the proposed
lessee upon the amount of bonus, rentals, or royalty
to be paid for the lease, or because of any one of a num-
ber of other reasons which it is unnecessary here to
enumerate.

If a holding contrary to this opinion were made,
it would follow that if any one of such owners failed or
refused for any reason to join the oil and gas lease with
other owners of undivided interests, the result necessarily
would be that the minerals owned by the State would remain
unleased and undeveloped until by partition, or otherwise,
the non-consenting owner's interest could be segregated from
the remainder of the tract. We are unable to agree that such
a result was intended by or should be permitted to result



from the Relinquishment Act. On the contrary, we believe that a reasonable and fair construction of the Act is that each owner is authorized to lease, on behalf of the State, that proportion of the oil and gas which bears the same ratio to all of the oil and gas as such owner's undivided interest in the surface and soil bears to the whole surface and soil.

In the recent case of Humble Oil & Refining Company v. Lloyd, 106 S. W. (2d) 213, opinion by the Court of Civil Appeals, at Beaumont, with writ of error refused by the Supreme Court, there was involved the validity of an oil and gas lease executed by a surviving husband on school lands in which the minerals had been reserved to the State, the surface of which lands constituted community property of one Vela and his first wife. Vela's first wife died leaving surviving children as her heirs at law. Upon the death of Vela's first wife, her one-half interest in the surface of the land passed by descent and distribution to her children, and they, thereupon, became tenants in common with Vela, the surviving husband, in the ownership and possession of the surface. The oil and gas lease executed by Vela, after the death of his first wife, was not executed by the surviving children.

The Court upheld the contention of the surviving husband's lessee, Humble Oil & Refining Company, and adjudged that such lessee held a valid lease upon the full leasehold interest in the entire tract of land in question, by virtue of its lease from the surviving husband. Although the opinion of the court is chiefly based upon the power of a community survivor to sell and dispose of community property, however, the reasoning of the opinion of the Court is such as to clearly indicate that in the absence of such special power as is vested in a community survivor, the agency to lease would be vested in the various owners of undivided interest in proportion to their respective interests.

With respect to the particular lease which you enclosed in your letter, you are advised that, in our opinion, the provisions of paragraph 9 of said lease do not operate so as to reduce the bonus, rentals and royalty payable to the State. Paragraph 9 of the lease simply provides



that if the lessor owns a less interest in the leased premises than the entire and fee simple estate, then the payments under the lease shall be reduced accordingly. Under all of the decisions in this State, it is settled that the State of Texas remains the owner of all of the oil and gas underlying the land covered by the Relinquishment Act until the execution of a valid oil and gas lease thereon. The real lessor of the oil and gas lease executed by Saltmount Oil Company is the State of Texas, acting through one of its agents, the Saltmount Oil Company. See Greene v. Robison, 8 S. W. (2d) 655; Colquitt v. Gulf Production Company, 52 S. W. (2d) 235; Lemar v. Garner, 50 S. W. (2) 789. The lessor, the State of Texas, does not own a "less interest in the leased premises than the entire and fee simple estate" insofar as the subject matter of the lease, the oil and gas, is concerned. This being true, no grounds exist for the application of paragraph 9 of the lease, and the obligation of the lessee to pay the full bonus, annual rental and royalty is not lessened or affected by reason of the fact that the State's agent, Saltmount Oil Company, owns only an undivided interest in the surface and soil.

We will further state that in the event at some future time, the owners of the remaining undivided interests in the tract of land should confirm or ratify, or otherwise enter into or bind themselves by the lease executed by Saltmount Oil Company, then the State of Texas will be entitled to one-half of the bonus paid to such other owners as consideration for their execution, ratification or confirmation of said lease. If such owners execute new and separate leases, the State of Texas will be entitled to one-half of the bonus, rentals and royalty paid under those leases. These conclusions are in accord with the principles announced in Lone Acre Oil Company v. Swayne, 76 S. W. 380, and in Burnham v. Hardy Oil Co., 147 S. W. 330, in both of which cases it was held that one tenant in common could lawfully execute an oil and gas lease upon land in which such tenant in common owned only an undivided interest.

You are accordingly advised that you are authorized to file and accept an oil and gas lease executed under the



Relinquishment Act by a surface owner who owns only an undivided interest.

However, with respect to the particular lease in question (described in paragraph 3 of this opinion) it is our opinion that such lease is now subject to forfeiture and termination because of the lessee's failure either to drill or to pay the rental provided for in paragraph 5 of the lease. See Article 5272, Revised Civil Statutes,1925.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Robert E. Kepke*

Robert E. Kepke
Assistant

REK:BT

APPROVED
OPINION
COMMITTEE

BY W.R.K.
CHAIRMAN